9 F.3d 109
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John Lee STEPHENS, Petitioner-Appellant,
v.
Michael O'DEA, Warden, Defendant-Appellee.
 No. 93-5288.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1993.
 
 Before: MILBURN and NELSON, Circuit Judges; and GILMORE, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Petitioner John Lee Stephens, a Kentucky prisoner, appeals from the judgment of the district court dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. On appeal, the sole issue presented for review is whether the district court erred in denying habeas corpus relief upon Stephens' claim that his due process right to a fair trial was violated by the trial court's admonition to his counsel during closing argument. For the reasons set out below, we affirm.
 
 I.
 
 2
 On April 19, 1990, a grand jury, in Lewis County, Kentucky, returned a six-count indictment against John Lee Stephens and one co-defendant.[1] Stephens was indicted for two counts of first degree burglary in violation of Ky.Rev.Stat. Sec. 511.020; one count of attempted murder in violation of Ky.Rev.Stat. Secs. 506.010 and 507.020; one count of receiving stolen property over $100 in violation of Ky.Rev.Stat. Sec. 514.110; one count of theft by unlawful taking over $100 in violation of Ky.Rev.Stat. Sec. 514.030; and one count of possession of a handgun by a convicted felon in violation of Ky.Rev.Stat. Sec. 527.040. Following arraignment and the filing of various pre-trial motions, a jury trial commenced on August 9, 1990 in the Lewis County, Kentucky, Circuit Court, Judge James W. Lyon, Sr. presiding.
 
 
 3
 After several days of trial, the jury returned a verdict against Stephens finding him guilty of attempted murder, burglary in the first degree, possession of a handgun by a convicted felon, theft by unlawful taking over $100, and receiving stolen property over $100. The trial court sentenced petitioner Stephens to an aggravated sentence of imprisonment for forty (40) years on the above convictions as follows: (1) a twenty year sentence on the conviction for attempted murder; (2) a fifteen year consecutive sentence on the conviction for burglary in the first degree; (3) a five year sentence on the conviction for possession of a handgun by a convicted felon, to run consecutively to the sentences for attempted murder and burglary in the first degree; (4) a five year sentence on the conviction for unlawful taking over $100, to run concurrently with the attempted murder sentence; and (5) a five year sentence on the conviction for receiving stolen property over $100, to run concurrently with the sentence for attempted murder.
 
 
 4
 After a final judgment and sentence was entered, petitioner Stephens filed a direct appeal to the Supreme Court of Kentucky. On appeal to the Supreme Court of Kentucky, Stephens argued, inter alia, that the trial court improperly admonished his trial counsel for making inaccurate statements concerning evidence during closing argument. The admonition at issue before the Supreme Court of Kentucky, which also forms the basis for Stephens' appeal to this Court, occurred as follows during the closing argument of defense counsel:
 
 
 5
 MR. CURTIS [counsel for defense]: ... But, the most important thing about Mr. Gleason's testimony was who were suspects. He had been investigating Talbert and Marshall ever since 1988, and that he suspected them to be involved in a burglary ring. Did he ever mention John Lee Stephens' name as being a suspect in any burglary? No. But, you can rest assured that if he had any information that Mr. Stephens was a suspect in a burglary, the Commonwealth would have presented that to you, ladies and gentlemen.
 
 
 6
 MR. DOUGLAS [counsel for the Commonwealth]: Judge, I'm going to object to that. That's an inaccurate statement.
 
 
 7
 JUDGE LYON: Objection sustained. Mr. Curtis, I admonish you to not make any more reference to Mr. Gleason did not have John Lee Stephens as a suspect. As I recall, Mr. Douglas did ask a question, and there was an objection, and I sustained that objection.
 
 
 8
 MR. CURTIS: Your Honor, I object to that characterization.
 
 
 9
 J.A., 161-162. Although the trial court's admonition was arguably erroneous, the Supreme Court of Kentucky affirmed the judgment of conviction. In an unpublished opinion issued on October 24, 1991, the Court rejected Stephens' claims of error, including his claim that the trial judge improperly admonished defense counsel during closing argument.
 
 
 10
 Thereafter, on April 3, 1992, petitioner Stephens filed his petition for writ of habeas corpus in federal district court. In his petition, Stephens raised the same challenges to the district court that had been rejected by the Supreme Court of Kentucky. Petitioner alleged five errors including, inter alia, that the trial court improperly admonished his trial counsel for making inaccurate statements during closing argument. Respondent O'Dea filed his answer to the habeas petition on June 9, 1992, seeking dismissal of the petition or alternatively for summary judgment, and the matter was referred to a magistrate judge.
 
 
 11
 In a report and recommendation filed on January 21, 1993, the magistrate judge recommended that the habeas petition be dismissed. In his exceptions to the report and recommendation, Stephens dispensed with four of his five grounds for relief, and challenged only that portion of the report dealing with the trial court's admonition during defense counsel's closing argument. After a de novo review, the district court entered an order adopting the report and recommendation, and denying Stephens' habeas petition with prejudice. The district court also issued a certificate of probable cause for this appeal in its order dismissing the habeas petition. This timely appeal followed.
 
 II.
 
 12
 The record reveals that several witnesses testified at Stephens' trial. Jeffrey Talbert described the events of April 1, 1990. Talbert testified that he and Stephens left Stephens' home in Greenup County, Kentucky, and set out for Grayson, Kentucky to look for women. When they got into the vicinity of Grayson, they started a burglary spree which continued into Lewis County, Kentucky, and ended up in Greenup County, Kentucky. Talbert further testified that near Vanceburg, Kentucky, he and Stephens stopped at the home of Howard Reis. According to Talbert, while Stephens was walking toward the house, he drove to a local grocery store for a soda and a snack.
 
 
 13
 Howard Reis, the victim of the attempted murder conviction, testified at Stephens' trial. Mr. Reis identified Stephens as the person who had been in his house and who had shot at him both in the house and from the fence outside the house. Nothing was stolen from the Reis residence, apparently because Stephens was caught in the act of gathering up the goods that he intended to steal.
 
 
 14
 Deputy Sheriff Joe Gleason also testified at Stephens' trial. Deputy Gleason testified that he received a radio transmission on April 1, 1990, that a car had been involved in a burglary in Lewis County, and was headed for Greenup County. The radio transmission also included the license plate number of the car driven by Jeffrey Talbert. Deputy Gleason told the jury that he saw Talbert's car drive past him. He then stopped the car, questioned Talbert and took Talbert into custody. Deputy Gleason stated that he found coins, pillowcases full of goods, and loaded weapons in Talbert's car.
 
 
 15
 Dean Switzer testified that on the morning of April 2, 1990, he started his mail truck so that it could warm up prior to his deliveries. Switzer testified that while he was inside his house drinking coffee, someone stole the mail truck and headed toward Greenup County in an easterly direction. Switzer did not see the individual who stole the truck, but he notified the Kentucky State Police who set up a roadblock in Greenup County.
 
 
 16
 Kentucky State Police Trooper Richard Ledford testified that he was part of the roadblock in Greenup County on the morning of April 2, 1990. The police suspected that Stephens was the driver of the stolen truck, and the roadblock had been set up near the residence of Stephens' father, Lester Stephens. Trooper Ledford recalled that when the stolen mail truck approached the roadblock, one of the state troopers accidentally turned on the blue lights on his squad car. Thereafter, the mail truck sped away, and a chase ensued. Trooper Ledford further testified that he chased the truck until the truck ran into the wall of a garage. At that point, the driver of the truck fled the scene on foot, and then entered a briar thicket. Trooper Ledford stated that he pursued the individual on foot, but that he did not continue his pursuit into the briar thicket.
 
 
 17
 The next morning, April 3, 1990, Stephens turned himself in at the Greenup County Sheriff's department. Trooper Ledford, who was present when Stephens turned himself in, told the jury that Stephens was badly scratched at that time.
 
 
 18
 The record reveals that on direct examination, the Commonwealth attorney never directly asked Deputy Gleason whether Stephens was a suspect of the burglary ring investigation. However, he did ask Deputy Gleason who was a suspect in relation to the stolen mail truck. To that question, Deputy Gleason replied, "John Stephens." On cross-examination, defense counsel asked Gleason about other suspects in the burglary ring, without inquiring whether Stephens was a suspect.
 
 
 19
 During his closing argument, Stephens counsel discussed the testimony of Deputy Gleason. At one point in the closing argument, the trial judge admonished defense counsel for making inaccurate statements concerning the evidence. The admonition at issue in this appeal occurred while defense counsel was discussing Deputy Gleason's testimony during closing argument. The Commonwealth objected to defense counsel's characterization of Gleason's testimony. The trial judge sustained the objection, then admonished defense counsel "not to make any more reference to Mr. Gleason did not have John Lee Stephens as a suspect."
 
 III.
 A.
 
 20
 When reviewing a district court's decision to grant or deny a petition for habeas corpus, an appellate court considers all questions of law de novo. Sneed v. Donahue, 993 F.2d 1239, 1241 (6th Cir.1993); Lundy v. Campbell, 888 F.2d 467, 469-70 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990). We review a district court's findings of fact under the clearly erroneous standard. Id.
 
 B.
 
 21
 Petitioner Stephens argues that the district court erred in denying his petition for habeas relief on the ground that his due process right to a fair trial was violated when the trial judge admonished defense counsel during closing argument. Stephens asserts a key piece of evidence that was argued during this matter was the issue of whether he was ever a suspect in a burglary ring that was operating in Greenup and Lewis counties. Stephens maintains that Judge Lyon's comments on this key piece of evidence was highly prejudicial because Deputy Gleason never testified that Stephens was a suspect of the burglary ring investigation.
 
 
 22
 Stephens cites several Kentucky state court decisions in support of his assertion that he is entitled to habeas corpus relief because the trial court committed an abuse of discretion by improperly commenting on a key piece of evidence in violation of Kentucky law. On direct review, the Supreme Court of Kentucky, in affirming Stephens' conviction, concluded that the trial court's admonition was not an abuse of discretion under the relevant Kentucky authorities.
 
 
 23
 The Supreme Court of the United States has stated many times that "federal habeas corpus relief does not lie for errors of state law." See, eg. Estelle v. McGuire, 116 L.Ed.2d 385, 396, 112 S.Ct. 475 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990). Moreover, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle, 116 L.Ed.2d at 396. Accordingly, Stephens' argument that he is entitled to habeas corpus relief for the trial court's abuse of discretion under state law must fail.
 
 
 24
 In conducting habeas review, we are limited to deciding whether the trial court's admonition to defense counsel during closing argument was an error of constitutional magnitude. See, Estelle, supra. In support of his argument that the trial judge's admonition deprived him of a fundamentally fair trial, Stephens relies heavily upon Quercia v. United States, 289 U.S. 466 (1933). In Quercia, the Supreme Court found that the trial court committed highly prejudicial error in its instructions to the jury. The trial court commented to the jury:
 
 
 25
 "And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during his testimony. It is rather a curious thing, but that is almost always an indication of lying. Why it should be so we don't know, but that is the fact. I think that every single word the man said, except when he agreed with the Government's testimony, was a lie."
 
 
 26
 Quercia, 289 U.S. at 468. The Quercia court held that a trial court's privilege to comment on the facts must be limited to safeguard against abuse. Specifically, the Supreme Court stated that in commenting upon the evidence, the trial judge may not assume the role of a witness. While the trial judge may analyze and dissect the evidence, he or she may not either distort it or add to it. Finally, a trial judge's comments should not be one-sided as to mislead or be based upon deductions and theories unwarranted by the evidence. Id. at 470. On this reasoning, the Supreme Court reversed the defendant's conviction stating further, "[the trial court's] characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Id. at 472. See also, United States v. Blakeney, 942 F.2d 1001, 1013 (6th Cir.), cert. denied, 112 S.Ct. 646 (1991), and, 112 S.Ct. 881 (1992).
 
 
 27
 Quercia is clearly distinguishable from the case presently before this Court. Unlike the trial judge's comments in Quercia, the record in the instant case does not show that the trial court's admonition constitutes prejudicial error which deprived Stephens of a fair trial.
 
 
 28
 Initially, we find that the trial judge's comment on the evidence was ambiguous. Due to its obscure nature, this Court is not convinced that the comment was of a sort to remain firmly in the mind of each juror, thereby precluding them from a fair consideration of all the evidence.
 
 
 29
 Moreover, we conclude that the record does not support a finding that the trial judge's admonition, although possibly an erroneous statement of the proceedings, was an unfair characterization of the evidence capable of adding to the evidence or misleading the jury. Although Stephens is correct that the Commonwealth never directly asked Deputy Gleason whether Stephens was a suspect of the burglary ring investigation, the Commonwealth did ask Gleason if he had a suspect in the theft of the mail truck. To that question, Gleason replied, "John Stephens." On cross-examination, defense counsel asked Gleason about other suspects in the burglary ring, without inquiring whether Stephens was a suspect.
 
 
 30
 It is probable that the trial judge recalled Deputy Gleason's testimony that Stephens was a suspect in the theft of the mail truck. Although the trial judge may have incorrectly remembered the proceedings when he stated, "Mr. Douglas did ask a question, and there was an objection, and I sustained the objection," we conclude that such erroneous recollection did not prejudice Stephens' defense or otherwise result in an unfair trial.
 
 
 31
 However, even assuming that the trial judge improperly characterized Deputy Gleason's testimony regarding whether Stephens was a suspect of the burglary ring investigation, we find the trial judge's admonition, including the misstatement of evidence, was not prejudicial. In the instant case, unlike that of Quercia, the trial judge did not assume the role of a witness or add to the evidence or display partisanship. Clearly, the sort of prejudicial comment found in Quercia did not occur in this case. Accordingly, we hold that the trial judge's admonition to defense counsel during closing argument did not result in prejudicial error, nor did it deprive Stephens of his due process right to a fair trial.
 
 
 32
 Finally, we note that Stephens was not indicted for his participation in a burglary ring. We are not convinced that Stephens' status, or lack thereof, as a suspect in the burglary ring in any way affects the sufficiency of the evidence for his convictions. Stephens was found guilty of first degree burglary of the Reis residence, attempted murder of Mr. Reis and other offenses in Lewis County. A review of the record reveals that a rational fact finder could have found proof of guilt beyond a reasonable doubt. The record shows that the Commonwealth of Kentucky presented a strong case against Stephens. For example, the Commonwealth presented the testimony of two eyewitnesses, Jeffrey Talbert and Howard Reis, the victim, who both identified Stephens as the perpetrator of the stated crimes. Thus, we find the jury was provided with sufficient evidence to find that Stephens committed the specific crimes for which he was charged and convicted.
 
 IV.
 
 33
 For the reasons stated, the judgment of the district court dismissing Stephens' petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States, United States District Judge for the Eastern District of Michigan, sitting by designation