Hillsborough-northern judicial district
No. 2009-647

THE STATE OF NEW HAMPSHIRE

v.

JONATHAN A. PERFETTO

Argued: June 23, 2010
Opinion Issued: September 17, 2010

676

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*New Hampshire Civil Liberties Union Foundation*, of Concord (*Barbara R. Keshen* on the brief and orally), for the defendant.

CONBOY, J. The defendant, Jonathan A. Perfetto, appeals an order issued by the Superior Court (*Smukler*, J.) denying his motion to amend the conditions of his suspended sentence. We affirm.

The following facts are undisputed. On March 13, 2002, the defendant pleaded guilty to sixty-one counts of possession of child pornography. RSA 649-A:3 (2007) (amended 2008). As part of the plea agreement, the defendant was sentenced to a stand committed term of three to seven years at the state prison and four consecutive suspended sentences of three and a half to seven years each. One condition of the suspended sentences is that

the defendant have no contact with minors under the age of seventeen. The defendant served his stand committed sentence and was released in October of 2008.

The defendant moved to amend the conditions of his suspended sentences so that he could attend meetings at the Manchester South Congregation of Jehovah's Witnesses while being supervised by an elder member of the congregation. The congregation is family-oriented, and children are regularly present at the worship meetings. The defendant also requested that he be allowed to converse among the entire congregation both before and after the meetings. Without a hearing, the trial court denied the defendant's motion "for the reasons stated in the State's objection."

On appeal, the defendant asserts that the trial court's order violates his constitutional rights to religious freedom. He argues that the First Amendment to the United States Constitution and Part I, Article 5 of the New Hampshire Constitution require that when those rights are limited, the government must utilize the "least restrictive alternative." The defendant contends that the prohibition on contact with minors impinges on his constitutional rights and that the trial court erred by not tailoring the condition to satisfy the least restrictive alternative test. He also claims that his due process rights under the New Hampshire Constitution were violated when the trial court did not hold a hearing on his motion. The State argues, among other things, that these issues have not been preserved for appeal. Assuming, without deciding, that his claims have been preserved, we first address the defendant's religious freedom argument under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

Part I, Article 5 of the New Hampshire Constitution provides:

> Every individual has a natural and unalienable right to worship God according to the dictates of his own conscience, and reason; and no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession, sentiments, or persuasion; provided he doth not disturb the public peace or disturb others in their religious worship.

The defendant contends that by not amending the conditions of his suspended sentences to allow him to attend the congregation of his choice, he is being deprived of the right to the free exercise of his religion. While the defendant is not on probation, both the defendant and the State agree that the analytical framework governing restrictions on probationers applies here.

The parties disagree, however, as to the standard for determining whether a probation condition should be upheld. The defendant argues that where a condition affects a probationer's fundamental rights, the State must show that the condition is the least restrictive alternative available. The State counters that conditions of probation need only bear a reasonable relationship to the rehabilitation of the probationer and protection of the public. At oral argument, the defendant further asserted that the government must establish a compelling interest to warrant infringing on a probationer's fundamental rights. For the purpose of this appeal, we will assume that the defendant's fundamental rights have been infringed.

■ "To remain at liberty under a suspended sentence is not a matter of right but a matter of grace." *State v. Kessler*, 13 P.3d 1200, 1205 (Ariz. Ct. App. 2000) (quotation omitted). "[P]robationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free," but "these limitations in the aggregate must serve the ends of probation." *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975). "Conditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety." *Id.* "However, a court will not strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism." *United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999).

■■ We have previously held that to be constitutionally permissible, a condition authorizing random warrantless searches of a probationer must be reasonably related to the supervision and rehabilitation of the probationer. *State v. Zeta Chi Fraternity*, 142 N.H. 16, 30 (1997); *see also State v. Berrocales*, 141 N.H. 262, 263-64 (1996). We have not yet applied this test where probation conditions potentially affect a probationer's freedom of religion. The defendant urges us, instead, to look to *In re Caulk*, 125 N.H. 226, 230 (1984) (holding that the State demonstrated an interest sufficiently compelling to override a prisoner's privacy right to fast until death), and hold that there must be a compelling governmental interest to warrant restricting a probationer's fundamental rights. We decline to adopt such a requirement.

> Merely because a convicted individual's fundamental rights are involved should not make a probation condition which limits those rights automatically suspect. The development of a sensible probationary system necessarily requires that the trial court be vested with broad discretionary powers. It also requires that any condition which is imposed following conviction, whether or not it

touches upon "preferred" rights, must be viewed in the context of the [underlying goals of probation]. Thus, the crucial determination in testing probationary conditions is not the degree of "preference" which may be accorded those rights limited by the condition, but rather whether the limitations are primarily designed to affect the rehabilitation of the probationer or insure the protection of the public.

*Consuelo-Gonzalez*, 521 F.2d at 265 n.14.

■ We note that the condition in this case does not directly infringe on the defendant's free exercise of his religion: it is instead facially neutral and applies to the defendant's conduct regardless of whether he is in a church or elsewhere. Under these circumstances, we see no reason to require the State to show a compelling government interest. *Cf. Employment Div, Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872 (1990) (facially neutral, generally applicable laws that incidentally touch upon an individual's free exercise of religion do not require the government to show a compelling interest); *State v. Emery*, 593 A.2d 77, 80 n.* (Vt. 1991) (because probation conditions are facially neutral and have only an incidental impact on the defendant's religious freedom, analysis under the traditional freedom of religion standards is not required).

■ The decision in *People v. Branson*, 360 N.W.2d 614 (Mich. Ct. App. 1984), is instructive. In *Branson*, two probationers were prohibited from living at a religious encampment and limited to only four hours of religious services at the encampment each week. *Id.* at 615. The court rejected the probationers' constitutional claims, finding that the conditions bore a logical relationship to their rehabilitation. *Id.* at 616-17. Because the underlying crime involved violence against a young child living at the same religious encampment, the court found that it was entirely appropriate to restrict the probationers' time at the encampment to further the ends of protecting the children of the encampment. *Id.* at 616. The court noted that "[i]t is important to distinguish between freedom of belief, which may not be restricted, and freedom to act, which, as conduct, may be regulated." *Id.* at 617. The court found that while the probationers were limited in the time they could spend at the encampment, the condition was neither absolute nor prohibitive because any member of their religious community could join them in religious activities in an unlimited fashion. *Id.*

■ Here, the defendant's freedom of belief has not been restricted. He may still practice his religion in ways that do not violate the condition of his sentences, including the use of books and video and audio recordings. He may also arrange bible study with elders from his congregation and attend

meetings at a congregation where minors are not present. While the defendant may prefer to attend the congregation of his choosing, as a result of his suspended sentences, he "properly [is] subject to limitations from which ordinary persons are free." *Consuelo-Gonzalez*, 521 F.2d at 265.

■ The dispositive question here is whether the suspension condition is reasonably related to the rehabilitation or supervision of the defendant. *See Zeta Chi Fraternity*, 142 N.H. at 30 ("In order for the grounds for the probation condition to be reasonable, it need only further the rehabilitation or supervision of the defendant."). The record amply supports the conclusion that the condition furthers these goals, and at oral argument the defendant conceded as much. The defendant was convicted of sixty-one counts of possessing child pornography. Prohibiting him from having contact with children provides protection to the class of individuals exploited by him and furthers his rehabilitation by limiting the circumstances which could lead to his reoffending.

Because the Federal Constitution does not provide any greater protection than does the State Constitution with regard to the defendant's claims of error, we reach the same result under the Federal Constitution. *See Schave*, 186 F.3d at 843.

■ The defendant also contends that the trial court violated his state due process rights by not holding a hearing on his motion. *See* N.H. CONST. pt. I, art. 15. "Our threshold determination in a procedural due process claim is whether the challenged procedures concern a legally protected interest." *State v. Veale*, 158 N.H. 632, 637, *cert. denied*, 130 S. Ct. 748 (2009) (quotation omitted). Assuming that the defendant has shown that his claim concerns a legally protected interest, we cannot say that he was due any more process than was provided by the trial court. "The requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Id.* at 642.

■ The parties do not dispute any of the relevant facts relating to the defendant's conviction and the condition of his suspended sentences. Neither is there any dispute that minors will be present at the congregation's meetings. In his motion, the defendant outlined his proposed amendment to the suspension conditions and referred to his constitutional rights. The State objected and set forth the reasons for its argument that the subject condition properly met constitutional standards. In his appeal brief, the defendant contends that the court should have held a hearing to determine whether his proposal would further the interests of his supervision, to hear testimony regarding the size of the congregation and the number of minors attending meetings, to evaluate the defendant's risk to

reoffend, and to make observations of the proposed chaperone. None of these arguments were asserted by the defendant in his motion. While the defendant may now point to issues that could have been explored at a hearing, we do not conclude that under these circumstances, due process required a hearing.

Furthermore, the defendant has not demonstrated that a hearing would have established his entitlement to relief. The sentencing judge is accorded broad discretion in imposing conditions of probation or suspension so long as those conditions are reasonably related to the rehabilitation and supervision of the defendant. *See* RSA 651:2, V(a) (2007) ("A person may be placed on probation . . . under such conditions as the court may impose."). Because the conditions of the defendant's suspended sentence are reasonably related to his rehabilitation and supervision, the defendant would not be entitled to the requested relief regardless of additional evidence he may have presented at a hearing. *Cf. Grote v. Powell*, 132 N.H. 96, 99 (1989) (in habeas corpus proceeding, "the court need not hold a hearing if the existing record of the case clearly indicates that the petitioner is not entitled to the relief requested on the grounds alleged").

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.