NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Milford District Division
No. 2020-0234

THE STATE OF NEW HAMPSHIRE

v.

CARLEY WILLIAMS

Argued: October 14, 2021
Opinion Issued: November 24, 2021

John M. Formella, attorney general (Zachary L. Higham, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Carley Williams, appeals the decision of the Circuit Court (Derby, J.) to impose a portion of her suspended sentence. Following a multi-day, in-person, evidentiary hearing, the trial court found that the defendant violated the suspended sentence's condition of good behavior, in part, by committing identity fraud and that the violation warranted imposing "a reasonable portion of the suspended sentence." On appeal, the defendant argues that the trial court erred by finding that she committed identity fraud

and by holding the subsequent hearing telephonically at which it imposed 70 days (less 10 days of time served) of her 12-month suspended sentence. We affirm.

I. Identity Fraud

    A. Pertinent Facts

The following facts either were found by the trial court or relate the content of documents in the record. In 2016, the defendant reported to the police that a customer at work had exposed himself to her. This report was false, and, in 2017, she pleaded guilty to unsworn falsification and making a false report to law enforcement. For these offenses, the defendant received a 12-month correctional sentence, deferred for one year on the condition of good behavior, and then suspended for one year on the same terms. The deferred sentence became a suspended sentence in June 2018, which was set to expire in July 2019.

In April 2019, the defendant was arrested for theft by unauthorized taking. She was later convicted on this charge, and there is no dispute that her conviction violated the terms of her suspended sentence.

In June 2019, the State moved to impose the 12-month suspended sentence. At the November 4, 2019 hearing on the motion, the defendant claimed to be her brother's primary caretaker and argued that imposition of the 12-month suspended sentence would deprive him of necessary care. As a result, the trial court imposed only 10 days of the 12-month sentence. On November 26, 2019, the State moved to reconsider, arguing that the defendant had lied to the court about the extent of her brother's medical problems and her role caring for him.

The defendant subsequently filed a police report claiming that, on November 4, M.P., the daughter of her brother's girlfriend, had stolen from her. On December 11, 2019, the defendant called the Milford Police Department, posing as M.P., and asked whether there was a warrant for M.P.'s arrest. The defendant's call was forwarded to the Milford dispatch office.

The court held a hearing on the State's motion to reconsider on February 3, 2020. At that hearing, a Milford police officer testified that the police had investigated the defendant's claim that M.P. had stolen from her. When the officer was asked whether the police had charged M.P., he responded, "Yes. There is a warrant for her." He testified that the police had not yet apprehended M.P.

On February 7, 2020, the State filed a second motion to impose, asserting that the defendant committed identity fraud by "posing as another

2

individual in an attempt to obtain confidential information." The court held a hearing on the second motion to impose on March 2, 2020. The State presented the testimony of: (1) the director of the Milford dispatch center; (2) a Milford police officer; and (3) a Milford police detective. The defendant submitted no evidence on her own behalf.

With respect to the confidentiality of pending arrest warrant information, the director of the dispatch center testified that Milford arrest warrants are not available to the general public. He testified that dispatch provides pending arrest warrant information over the telephone only to law enforcement, and not to anyone else. A person seeking such information about themselves must ask for it in person. He further testified that the dispatch center treats all arrest warrant information as confidential, even if a Right-to-Know Law request is made. The director explained that "[b]asically," all criminal record information "comes through the SPOTS terminal." "SPOTS" stands for New Hampshire's State Police Online Telecommunications System. The dispatch center's policy is that "under no circumstances shall any information obtained from SPOTS be given to anyone other than a law enforcement officer properly authorized by his or her department."

The police officer and police detective likewise testified that Milford arrest warrants are not available to the general public and are treated as confidential. They testified that, if a third party were to call the department and ask for information about a warrant for someone else's arrest, the department would not provide that information. The detective further testified that, in response to the defendant's December 11 call, he called M.P. at the number in the department's computer system. He left a message for her and she returned the call, denying that she had called previously to inquire about warrants.

In a March 26, 2020 narrative order, the trial court: (1) granted the State's motion to reconsider and vacated its earlier order imposing only 10 days of the suspended sentence; (2) found, by a preponderance of the evidence, that the defendant breached the good behavior condition of her suspended sentence, in part, by committing identity fraud; and (3) concluded that the defendant's breach warranted imposing "a reasonable portion of the suspended sentence," less credit for time served.

As to the confidentiality of pending warrant information, the court found that the "police witnesses credibly testified that the existence of unexecuted arrest warrants is confidential information about the person who is the subject of the arrest warrant." Specifically, the court found that there was "sufficient evidence about the [Milford police department's] regular business practice of obtaining and executing arrest warrants prior to the actual arrest and the filing of charges, that any unexecuted arrest warrant against [M.P.] would not have been revealed to a member of the general public over the phone." The court

3

explained that although "[t]here was no evidence of a specific written statute, regulation or policy, . . . issued and unexecuted arrest warrants . . . are not available to the general public upon request."

B.  Analysis

To impose a suspended sentence on the ground that a defendant has violated a condition of good behavior, a trial court must find, by a preponderance of the evidence, that the defendant engaged in criminal conduct.  State v. Luikart, 174 N.H. ___, ___ (decided May 4, 2021) (slip op. at 5).  We review a trial court's decision to impose a suspended sentence for an unsustainable exercise of discretion.  State v. Gibbs, 157 N.H. 538, 540 (2008).  To prevail on a challenge asserting that the trial court erred in finding a violation of a suspension condition, a defendant must show that the evidence before the trial court on a motion to impose, viewed in the light most favorable to the State, fails to support the trial court's finding.  See Luikart, 174 N.H. at ___ (slip op. at 3).

Here, the trial court found that, in addition to her conviction for unauthorized taking, which indisputably violated the condition of good behavior, the defendant committed identity fraud.  Because the defendant was not convicted of identity fraud, the State had the burden to prove the essential elements of identity fraud by a preponderance of the evidence.  See id. at ___ (slip op. at 5).

The variant of identity fraud at issue is RSA 638:26, I(d), under which a person is guilty of identity fraud if he or she "[p]oses as another person, without the express authorization of such person, with the purpose of obtaining confidential information about such person that is not available to the general public."  RSA 638:26, I(d) (2016).  For the purposes of this appeal, the defendant does not dispute that she posed as another person without that person's authorization.  The only issue in dispute is whether she did so "with the purpose of obtaining confidential information about such person that is not available to the general public."  Id.

On appeal, the defendant argues that the trial court erred by finding, by a preponderance of the evidence, that she committed identity fraud because, she contends, "the existence of a pending arrest warrant [is] not 'confidential' within the meaning of the identity fraud statute."  The defendant asserts that for information to be "confidential" under RSA 638:26, I(d), it must be "declared so by law."  She reasons that because there is "[n]o statute or court rule" that "makes the existence of a pending warrant confidential," information about such warrants is not confidential as a matter of law.

Addressing this argument requires that we engage in statutory interpretation.  The interpretation of a statute raises a question of law, which

4

we review de novo.  See State v. Pinault, 168 N.H. 28, 31 (2015).  We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice.  Id.; see RSA 625:3 (2016).  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Pinault, 168 N.H. at 31.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  Only when the statutory language is ambiguous do we look to the legislative history to aid in our interpretation.  State v. Eldridge, 173 N.H. 61, 67 (2020).

Under the plain meaning of the identity fraud statute, information that is "confidential" is information that is "not available to the general public."  RSA 638:26, I(d).  As the State contends, "By its plain terms, the statute internally defines confidential information as information that is 'not available to the general public.'"  This internal definition is consistent with the plain meaning of the word "confidential."  See, e.g., Webster's Third New International Dictionary 476 (unabridged ed. 2002) (defining confidential to mean "communicated, conveyed, acted on, or practiced in confidence : known only to a limited few : not publicly disseminated : PRIVATE, SECRET").

However, the defendant argues that for the identity fraud statute to withstand a vagueness challenge, the information she requested must have been confidential according to some "legal authority."  She contends that unless some "legal authority" renders the information she requested confidential, a person of ordinary intelligence would have no notice that posing as someone else and asking whether there is a pending arrest warrant for that person violated the identity fraud statute.  See State v. Wilson, 169 N.H. 755, 770 (2017) (explaining that a statute can be impermissibly vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits" (quotation omitted)).  For the purposes of this appeal, we assume without deciding that the defendant's view of the identity fraud statute is correct.

To the extent that the trial court stated that there was no "specific written statute" rendering the pending warrant here confidential, the court was mistaken.  Nonetheless, we uphold the court's decision because valid alternative grounds support it.  See State v. Dion, 164 N.H. 544, 552 (2013) ("Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." (quotation and brackets omitted)).  Contrary to the defendant's assertions and as the State argues, information about the pending warrant in this case was confidential pursuant to RSA 106-B:14.  See RSA 106-B:14 (Supp. 2020).

Information that there is a pending warrant for another person's arrest is available to the general public only under certain circumstances, see RSA 106-B:1, II(a), XI (Supp. 2020), :14, I(c)(1).  "[S]ummons and arrest information" is

5

deemed "[c]onfidential criminal history record information" when there has been no disposition in the criminal case, unless "the person remains a fugitive from justice." RSA 106-B:1, II(a); see RSA 106-B:14. A "fugitive from justice" is "[a] criminal suspect or witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, esp. by fleeing the jurisdiction or by hiding." Black's Law Dictionary 813 (11th ed. 2019); see State v. Gaylor, 158 N.H. 230, 231 (2009) (referring to the defendant as a "fugitive from justice" when he "absconded" while the jury was deliberating at his criminal trial).

"Any person may . . . obtain" public criminal history record information "on another person." RSA 106-B:14, I(c)(1). However, there is no comparable provision allowing "[a]ny person" to obtain confidential criminal history record information about another person. Id. Any individual or public or private agency receiving confidential criminal record information from the State police may not disclose it "to another person for any purpose." RSA 106-B:14, I-a(a). Any person violating RSA 106-B:14 is "guilty of a misdemeanor for each offense." RSA 106-B:14, I-b.

Pursuant to these statutes, information about the pending arrest warrant in this case constituted confidential criminal history record information, which the defendant was not entitled to obtain from the Milford dispatch office. See Augur v. Town of Strafford, 158 N.H. 609, 614 (2009) (explaining that when "the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, . . . we may decide the issue as a matter of law."). The undisputed evidence before the trial court was that the defendant's telephone call to the Milford Police Department was forwarded to the Milford dispatch office; the Milford dispatch office obtains information about pending warrants from the State police; the defendant sought information about an unexecuted warrant for the arrest of someone other than herself; and the subject of the warrant was not a fugitive from justice. The defendant's argument that the information was not "confidential" because, two months after she called the Milford Police Department, a police officer testified about M.P.'s warrant, misses the mark. Such testimony did not alter the status of the information under RSA chapter 106-B. Because the information the defendant sought when she pretended to be M.P. was confidential under RSA chapter 106-B, and therefore confidential under the identity fraud statute, we reject her assertion that the trial court erred by finding that she committed identity fraud.

## II.  Telephonic Hearing

### A.  Pertinent Facts

On March 16, 2020, following the declaration by Governor Sununu of a State of Emergency due to the COVID-19 pandemic, this court suspended all in-person circuit court proceedings through April 6, 2020, with certain

exceptions, including one for "[p]roceedings necessary to protect constitutional rights of criminal defendants." Order Suspending In-Person Court Proceedings, https://www.courts.nh.gov/sites/g/files/ehbemt471/files/documents/2021-08/3-16-20-order.pdf (last visited November 23, 2021). Our order "expressly [did] not prohibit court proceedings by telephone, video, teleconferencing, email, or other means that do not involve in-person contact." Id. Our March 16 order allowed the Administrative Judges of the Circuit Court to "determine . . . that hearings in individual cases . . . [would] be conducted by video or by telephone." Id.

On March 27, 2020, we issued an order continuing the suspension of all in-person circuit court proceedings through May 4, with exceptions, including one for "[p]roceedings necessary to protect constitutional rights of criminal defendants." Renewed and Amended Order Suspending In-Person Court Proceedings Related to New Hampshire Circuit Court and Restricting Public Access to Courthouses, https://www.courts.nh.gov/sites/g/files/ehbemt471/files/documents/2021-08/3-27-20-renewal-circuit-court-order-suspending-in-person-court-proceedings.pdf (last visited November 23, 2021). Our March 27 order provided that "to comply with the ongoing recommendations to mitigate the risks of COVID-19, the [circuit] court will conduct" many of the hearings in the cases falling within the exceptions "telephonically, to the extent possible." Id. We directed that our order "be interpreted broadly for the protection of the public from risks associated with COVID-19." Id.; cf. Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 15002, 134 Stat. 281, 527-30 (2020) (signed into law on March 27, 2020, and allowing federal courts to use video teleconferencing or telephone conferencing to conduct certain criminal proceedings, including probation and supervised release revocation, misdemeanor pleas and sentencing, and felony pleas and sentencing under certain conditions given the COVID-19 pandemic).

In light of our orders, on April 3, 2020, the trial court ordered that it would decide, at an April 6 telephonic hearing, how much of the defendant's suspended sentence to impose. The defendant objected, arguing that she had a due process right under the State and Federal Constitutions "to be present at a hearing," and observing that were it not for the COVID-19 pandemic, "the Court could not conduct this hearing telephonically." The defendant requested that the court "continue the imposition hearing to whenever the Courts reopen for in-person hearings."

The telephonic hearing took place as scheduled on April 6. After hearing argument, the court stated that it did not "see[] a problem with going forward telephonically because . . . we had a two-part [evidentiary] hearing already." The court then invited defense counsel to set forth his position on how much of the suspended sentence the court should impose. The court also allowed the

7

defendant to make a statement.  After hearing from the State, the court imposed 70 days of the 12-month suspended sentence with a credit of 10 days for time served.

B.  Analysis

The defendant contends that the trial court violated her state and federal constitutional rights to due process by imposing a portion of her suspended sentence at a telephonic hearing.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV.  We first consider the defendant's argument under the State Constitution, using federal cases only to aid in our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

Our threshold determination in a procedural due process claim is "whether the challenged procedures concern a legally protected interest."  State v. Mwangi, 161 N.H. 699, 703 (2011) (quotation omitted).  If such an interest is at stake, we then determine whether the procedure at issue afforded the requisite safeguards.  Id.  In so doing, we balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quotation omitted); see Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Further, we are mindful that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands."  Mwangi, 161 N.H. at 703 (quotations omitted).  "The ultimate standard for judging a due process claim is the notion of fundamental fairness."  State v. Veale, 158 N.H. 632, 637 (2009) (quotation omitted).  "Fundamental fairness requires that government conduct conform to the community's sense of justice, decency and fair play."  Id. (quotation omitted); see Baker v. Cunningham, 128 N.H. 374, 379 (1986) ("The degree of procedural protection required varies and must be determined with reference both to the individual right or expectation in question and to the public interest that justifies a limitation on the right." (citations omitted)).

"We have recognized that a significant liberty interest exists which is worthy of due process protection under our State Constitution when the State seeks to revoke a suspended sentence and incarceration may be the sanction."  State v. LaPlaca, 162 N.H. 174, 178 (2011).  "This is so because the conditional liberty of a defendant under a suspended sentence 'includes many of the core

8

values of unqualified liberty and its termination inflicts a "grievous loss" on the [defendant] and often on others.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).

> Therefore, when the State seeks to impose a suspended sentence, the record must show that the following procedures have been afforded: (1) written notice of the conduct which triggers the sought-after incarceration; (2) disclosure to the defendant of the evidence against [her]; (3) the opportunity to be heard in person and to present witnesses and evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a statement in the record by the court indicating in substance the evidence relied upon and the reasons for imposing commitment; and (6) representation by counsel, to be appointed by the court if the defendant is indigent.

Id. (quotation omitted); see Morrissey, 408 U.S. at 489 (concerning due process protections for a parolee at a revocation hearing). Chief among the rights to be afforded a defendant when the State seeks to impose a suspended sentence is a right to a hearing at which the court determines two issues: whether the defendant violated a condition of the suspended sentence, and, if so, whether the defendant's violation warrants imposing the suspended sentence. See United States v. Brown, 899 F.2d 189, 193 (2d Cir. 1990) (discussing revocation of probation); Morrissey, 408 U.S. at 483-84, 487-88 (under Federal Constitution, to revoke parole when revocation decision is discretionary, parolee must be afforded opportunity for hearing that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation").

In arguing that the trial court violated her due process rights by imposing part of her suspended sentence at a telephonic hearing, the defendant observes that a criminal defendant has the right to be present "whenever [her] presence has a relation, reasonably substantial, to the fulness of [her] opportunity to defend against the charge." United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam) (quotation omitted). As the Supreme Court has held, a criminal defendant "is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if [her] presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987).

The defendant further observes that courts in many jurisdictions have ruled that sentencing is one of the critical stages at which a criminal defendant has a due process right to be physically present. See, e.g., United States v. Diggles, 957 F.3d 551, 558 (5th Cir. 2020); United States v. Jacques, 321 F.3d 255, 262 (2d Cir. 2003); United States v. Jackson, 923 F.2d 1494, 1496 (11th Cir. 1991); Dunbar v. State, 89 So. 3d 901, 907 (Fla. 2012). The defendant

9

extrapolates from this case law that the trial court violated her due process rights by deciding, in a telephonic hearing, how much of her suspended sentence to impose. We are unpersuaded.

To support her argument, the defendant relies heavily on United States v. Fagan, 464 F. Supp. 3d 427, 429-30 (D. Me. 2020), to highlight the importance of a defendant and judge both being physically present during sentencing. However, Fagan concerned the acceptance of a guilty plea and imposition of an initial sentence, not the imposition of a suspended sentence, and concerned compliance with a federal rule of criminal procedure and a federal statute, not the constitutional guarantee of due process. Fagan, 464 F. Supp. 3d at 428. The defendant's reliance, therefore, is misplaced.

"The imposition of a suspended sentence 'is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply.'" LaPlaca, 162 N.H. at 182 (quoting Morrissey, 408 U.S. at 480)). Unlike the imposition of an initial sentence, the imposition of a suspended sentence is remedial rather than punitive. Gibbs, 157 N.H. at 541. "[T]he imposition of a suspended sentence is the remedy for a defendant's noncompliance, not a punishment for the underlying acts." Id. The defendant's reliance upon case law developed in the context of a criminal defendant's right to be present at his or her initial sentencing, therefore, is misplaced. See id. at 540-42.

The defendant also relies upon In re Klein, 17 Cal. Rptr. 71, 72 (Dist. Ct. App. 1961). However, her reliance on that case, which concerned probation revocation, is equally misplaced. In that case, the State conceded that the petitioner had "a constitutional right to appear in person and with counsel" in the probation revocation proceeding, but asserted that, by accepting probation, the petitioner had "impliedly acquiesced" to being sentenced in absentia and without representation by counsel. Klein, 17 Cal. Rptr. at 72, 76.

Here, "we cannot say that [the defendant] was due any more process than was provided by the trial court." State v. Perfetto, 160 N.H. 675, 680 (2010). The trial court held multiple in-person hearings on the State's motion(s) to impose at which the defendant, who was represented by counsel, had "the opportunity to be heard in person and to present witnesses and evidence" as well as "the right to confront and cross-examine adverse witnesses." LaPlaca, 162 N.H. at 178 (quotations omitted). Based upon those hearings, the trial court issued a narrative order finding that the defendant violated the good behavior condition of her suspended sentence and that this violation warranted imposing "a reasonable portion of the suspended sentence." As the trial court observed, before it held the telephonic hearing identifying the "reasonable portion" to be imposed, the court had already held "a two-part hearing." The defendant was represented by counsel at the

telephonic hearing and was allowed to make a statement to the court.  See United States v. Leavitt, 478 F.2d 1101, 1104 (1st Cir. 1973) ("Allocution, although always required under federal procedure to be invited and allowed, is not—at least so far as the invitation is concerned—a constitutional right essential to fundamental fairness.").

The defendant has not demonstrated that her physical, as opposed to telephonic, presence at the April 6, 2020 hearing "would have been useful in ensuring a more reliable determination" as to how much of her suspended sentence to impose.  Stincer, 482 U.S. at 747.  Considering the extensive process the defendant received and the State's important interest in protecting public health during a global pandemic, and keeping in mind that "the requirements of due process are flexible," we cannot conclude that her due process rights were violated because the April 6 hearing was conducted by telephone, instead of in person.  Mwangi, 161 N.H. at 703 (quotations omitted). For all of the above reasons, we conclude that no process was due beyond what the defendant was afforded, and, therefore, that the trial court's decision to impose a portion of her suspended sentence at a telephonic hearing did not violate her right to procedural due process.  We reach the same result under the Federal Constitution because the State Constitution provides at least as much protection as the Federal Constitution provides under these circumstances.  See Mwangi, 161 N.H. at 706; Morrissey, 408 U.S. at 489.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11