**Mitchell SNEED, Petitioner–Appellant,**

v.

**David DONAHUE, Respondent–Appellee.**

No. 92–6425.

United States Court of Appeals, Sixth Circuit.

Submitted May 3, 1993.

Decided May 24, 1993.

Mitchell Sneed (briefed), pro se.

Suzanne D. Cordery (briefed), Office of the Gen. Counsel, Corrections Cabinet, Frankfort, KY, for respondent-appellee.

Before: MILBURN, RYAN, and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Petitioner Mitchell Sneed appeals the dismissal of his writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 alleging that the automatic revocation of his parole without a hearing pursuant to Kentucky law violates the Due Process Clause of the Fourteenth Amendment. On appeal, the issues are (1) whether the automatic revocation of petitioner's parole status without a hearing pursuant to Kentucky Revised Statutes Annotated § 439.352 (Baldwin 1962) upon petitioner's incarceration for conviction of a crime committed while on parole violates the Due Process Clause of the Fourteenth Amendment, and (2) whether the aggregation of petitioner's sentences for the crimes for which he was convicted violates constitutional standards. For the reasons that follow, we affirm.

## I.

### A.

Petitioner is currently an inmate committed to the custody of the Kentucky Department of Corrections. He is serving a total sentence of forty-six years for the offenses of first-degree robbery, second-degree escape, second-degree persistent felony offender, and first-degree promoting contraband, all in violation of Kentucky law.

Petitioner was originally committed to the custody of the Kentucky Department of Corrections on July 15, 1976, to serve a sixteen-year sentence for six counts of first-degree robbery and one count of second-degree escape. On May 6, 1980, petitioner was granted parole but held under detainers filed by Trimble County, Kentucky, and Vanderburgh County, Indiana. At the time of his parole, petitioner's parole discharge date was March 7, 1992.

In July of 1981, he was granted parole status by Indiana authorities on an Indiana sentence. Indiana released him from parole supervision in March 1983. In March 1987, while still on parole in Kentucky, he was arrested for the offense of first-degree robbery and subsequently convicted of this offense and for being a persistent felony offender in violation of Kentucky law. On June 16, 1987, he received a twenty-year sentence for these crimes. On June 24, 1987, after being convicted again on another offense of first-degree robbery in violation of Kentucky law, petitioner was sentenced to ten years. He was then recommitted to the custody of the Kentucky Department of Corrections on July 20, 1987, to serve his new sentences. Consequently, the Kentucky Parole Board ("Board") revoked his parole status with respect to his original sixteen-year sentence pursuant to Ky.Rev.Stat. § 439.352.

In 1988, petitioner was convicted of promoting contraband in violation of Kentucky law and was sentenced to two years incarceration. Petitioner's sentences for each of his convictions, including the original conviction resulting in a sixteen-year sentence, were aggregated for a total of forty-six years incarceration.

### B.

After exhausting his state remedies, petitioner filed his petition for writ of habeas corpus under 28 U.S.C. § 2254 in the district court. The district court referred the matter to the magistrate judge, pursuant to 28 U.S.C. § 636(b)(1), who made a report and recommendation that the petition for writ of habeas corpus be dismissed. On October 21, 1992, the district court accepted the magistrate judge's findings of fact, conclusions of law, and recommendation and dismissed the petition for writ of habeas corpus. This timely appeal followed.

### II.

### A.

■ "[A] parolee has significant liberty interest in a parole which is entitled to protection under the Due Process Clause." *Moss v. Patterson*, 555 F.2d 137, 138 (6th Cir.) (per curiam), *cert. denied*, 434 U.S. 873, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977). Petitioner Sneed argues that he was deprived of procedural due process as required by the Fourteenth Amendment when his parole was automatically revoked without a final hearing pursuant to Ky.Rev.Stat. § 439.352 which states in relevant part:

[R]ecommitment of a parolee to prison on a new sentence received for commission of a crime while on parole shall automatically terminate his parole status on any sentence on which he has not received a final discharge, or a restoration of civil rights, prior to the date of recommitment.

The district court held that Sneed had no clearly established right to a parole revocation hearing in 1987 when his parole was revoked and, therefore, denied the petition for writ of habeas corpus.

■ This case involves solely a question of law; the facts are not disputed. Therefore, we review the district court's denial of Sneed's petition for writ of habeas corpus de novo. *See Lundy v. Campbell*, 888 F.2d 467, 469 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990).

### B.

■ In support of his due process argument, Sneed relies on *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Summers v. Scroggy*, No. 87-5064, 1987 WL 38287 (6th Cir. July 31, 1987), *cert. denied*, 485 U.S. 941, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). In *Morrissey*, the Supreme Court considered the question of what due process is required before an individual's parole status may be revoked. The Court determined that there must be two opportunities for some type of informal hearing. *Id.* 408 U.S. at 485–488, 92 S.Ct. at 2602–2603. The first is a preliminary hearing to determine if probable cause exists to believe that the individual has violated his parole conditions. *Id.* at 485, 92 S.Ct. at 2602. In the present case, there was no need for such a preliminary hearing because the fact that Sneed was incarcerated for a subsequent offense was sufficient evidence to support a finding of probable cause that he had violated a condition of his parole. *Moody v. Daggett*, 429 U.S. 78, 86 n. 7, 97 S.Ct. 274, 278 n. 7, 50 L.Ed.2d 236 (1976); *United States v. Cornog*, 945 F.2d 1504, 1512 (11th Cir.1991).

The second hearing required by *Morrissey* is a final revocation hearing which serves two purposes. The first purpose is to determine whether the individual has in fact violated his parole. The second purpose "involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts." *Id.* 408 U.S. at 480, 92 S.Ct. at 2599. The Court explained that this step involves the *exercise of discretion* on the part of the parole authority in that it may consider mitigating circumstances presented by the parolee which may indicate that revocation is not warranted notwithstanding the parole violation. *Id.* at 480, 488, 92 S.Ct. at 2599, 2603. In sum, this final revocation hearing should

assure that the finding of a parole violation will be based on verified facts and that the

exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.

*Id.* at 484, 92 S.Ct. at 2601.

In *Moss v. Patterson,* 555 F.2d 137 (6th Cir.) (per curiam), *cert. denied,* 434 U.S. 873, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977), an appeal from the dismissal of a petition for a writ of habeas corpus, we discussed the impact of *Morrissey* upon a parolee's right to a hearing before his parole status is revoked. In *Moss,* the parolee committed a subsequent crime while on parole in Ohio, a violation of his parole conditions. The Ohio parole authority revoked his parole for this violation. Pursuant to Ohio Revised Code § 2929.41, no parole revocation hearing was given.

The district court in *Moss* determined that under Ohio Revised Code § 2929.41(B)(3), a parolee was automatically precluded from seeking reinstatement on parole where he was convicted of a subsequent crime until a statutory minimum had been served for the subsequent crime. *Id.* at 137. The district court then held that because no purpose would be served by a final revocation hearing, the parole authority had not violated due process by summarily revoking his parole. *Id.* at 137–38.

We disagreed with the district court's interpretation of Ohio Revised Code § 2929.-41(B)(3). We noted that since our decision in *Inmates Councilmatic Voice v. Rogers,* No. C72–1052 (N.D.Ohio 1974), *aff'd and modified,* 541 F.2d 633 (6th Cir.1976), the "Adult Parole Authority ha[d] promulgated rules ... which afford[ed] final revocation hearings in all cases, including those where a parolee is convicted of a new crime." *Id.* at 138. We concluded that the district court's interpretation of Ohio Revised Code § 2929.41 would render those rules meaningless. *Id.* Thus, we held that a better interpretation of the statute was that "it has nothing whatsoever to do with when a parole should be revoked, but was designed to set out rules for the imposition of sentence on a subsequent conviction after a parole has been revoked." *Id.; see also id.* at n. 3.

Implicit in our holding in *Moss* is the determination that the Ohio Adult Parole Authority possessed *discretion* in determining whether to revoke the parolee's parole status following the commission of a new crime. We then held that to revoke parole without the benefit of a meaningful hearing concerning mitigating factors would conflict with the Supreme Court's holding in *Morrissey. Id.* at 138. Following this holding we stated, "[r]egardless of how the statute is construed, we adhere to the opinion expressed in *Inmates Councilmatic Voice v. Rogers,* 541 F.2d at 636, that a parolee convicted of a subsequent crime is entitled to a parole revocation hearing if he requests it...." *Id.* at 138–139. To the extent that this last statement means a final parole revocation hearing must be given even where a parole violation results in an automatic, nondiscretionary revocation of parole, it is dictum.

Having determined that the statute in question does not strip the Ohio Adult Parole Authority of its *discretion* in determining whether to revoke parole status following a subsequent conviction, our holding in *Moss* is confined to those situations where the parole authority possesses *discretion* in its decision-making. Moreover, *Inmates Councilmatic Voice,* the basis for the above statement, does not address the question of whether a revocation hearing is required where parole is automatically revoked pursuant to state law. Rather, we simply held that in the event that the state takes custody of a parolee during the time that he is free on bond pending trial for a new crime, he is entitled to a parole revocation hearing within a reasonable time. 541 F.2d at 636.

We first considered the automatic parole revocation provision of Ky.Rev.Stat. § 439.-352 in light of *Morrissey* in our unpublished decision of *Harris v. Rees,* No. 83–5145, 729 F.2d 1461 (6th Cir. Feb. 27, 1984), *cert. denied,* 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 136 (1984). In *Harris,* we held that failure to provide a revocation hearing on the basis of this Kentucky statute did not violate the Due Process Clause. *Id.* at 3. We reasoned that *Morrissey* did not require a revocation hearing where the parole authority *had no discretion* regarding whether to revoke parole in light of the parole violation. *Id.* at 2. We noted that under the Kentucky statute,

the parole authority was *mandated* to revoke parole upon the individual's incarceration for a crime committed while on parole. *Id.* We distinguished *Moss* on the basis that in *Moss,* the parole authority *possessed discretion* regarding whether to revoke the individual's parole status. *Id.* at 2–3.

However, in our unpublished decision in *Summers v. Scroggy,* No. 87–5064, 1987 WL 38287 (6th Cir. July 31, 1987), *cert. denied,* 485 U.S. 941, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988), we reached the opposite conclusion regarding Ky.Rev.Stat. § 439.352. We held that this statute is unconstitutional because it automatically terminates parole without a revocation hearing. *Id.* at 3. We explained that *Moss* required a revocation hearing in order to allow the parolee to present mitigating circumstances for consideration by the parole authority. *Id.*

We again addressed the constitutionality of Ky.Rev.Stat. § 439.352 in our unpublished opinion of *Harrison v. Parke,* No. 89–6495, 1990 WL 170428 (6th Cir. Nov. 6, 1990). In *Harrison,* we determined that our decision in *Summers* was not mandated by the holdings in *Morrissey* or *Moss* and distinguished *Morrissey* and *Moss* on the basis that in both of those cases the parole authority *had discretion* regarding whether to revoke the parolee's parole status. In contrast, under Ky. Rev.Stat. § 439.352, the parole authority possesses no discretion regarding whether to revoke parole. *Id.* at 7. We concluded that our decision in *Summers* announced a new rule of law, *id.,* and further held that this new rule of law should not be applied retroactively. *Id.* at 8. It was on this basis that the district court in this case dismissed Sneed's petition for habeas corpus, i.e., because Sneed's parole status was revoked before *Summers* was decided, he possessed no right under *Harris v. Rees* to a parole revocation hearing.

### C.

The State of Kentucky requests that this court rule on the constitutionality of Ky.Rev. Stat. § 439.352. Given our conflicting unreported decisions on this issue and the likelihood that this issue will continue to reoccur, we believe such a request is appropriate. Moreover, this would not be an advisory opinion since petitioner Sneed argues that

*Summers* does not present a *new* rule of law, but rather is a correct analysis of *Morrissey,* which was decided before his parole status was revoked. Since we are not bound by our unpublished decisions in *Harris, Summers,* and *Harrison, see Cattin v. General Motors Corp.,* 955 F.2d 416, 431 n. 14 (6th Cir.1992), we can take a fresh look at the issue of whether Ky.Rev.Stat. § 439.352 violates a parolee's procedural due process guarantees.

We are of the view that our unreported decision in *Harris v. Rees* was correct. The Supreme Court in *Morrissey* clearly instructed that the purpose of a final revocation hearing is to give the parolee an opportunity to present facts challenging the determination that he has violated a condition of parole and to present all circumstances surrounding the violation to the parole authority so that it may exercise *its discretion* in a fully informed manner. In this case, however, a revocation hearing would serve no such purposes. It is undisputed that Sneed violated a condition of his parole and has met all the factual predicates required by Ky.Rev.Stat. § 439.352 before that section can be applied to him. In addition, it would be pointless for him to present mitigating circumstances to the Board since the Board has *no discretion* in determining whether to revoke his parole status. The holdings in *Morrissey* and *Moss* simply are not applicable to this case.

This conclusion is supported by *Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985), in which the Supreme Court stated that

[n]either *Gagnon [v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656] nor *Morrissey* considered a revocation proceeding in which the factfinder was required by law to order incarceration upon finding that the defendant had violated a condition of probation or parole. *Instead, those cases involved administrative proceedings in which revocation was at the discretion of the relevant decision maker.* Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue probation or parole.

Where such discretion exists, however, the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.

(Citations omitted) (emphasis added). Thus, *Black* teaches that *Morrissey* does not require that a parole authority be given discretion regarding when to revoke a parolee's parole status; rather, it simply requires that where such discretion is given, a revocation hearing is required.

Two other circuits have addressed the question of whether *Morrissey* requires a revocation hearing where a parolee violates a condition of parole which, by law, results in the automatic and *nondiscretionary revocation* of his parole status. Each circuit has reached the same conclusion as we did in *Harris v. Rees. See United States v. Cornog*, 945 F.2d 1504, 1512 (11th Cir.1991) (holding that final hearing is unnecessary where parole authority *must* revoke parole upon finding that the parolee has violated one of its conditions); *Pickens v. Butler*, 814 F.2d 237, 239 (5th Cir.) ("[I]f the Board in this case was required by Louisiana law to revoke Pickens' parole following his California felony conviction and had no discretion to continue parole, the Board was not required to give him a final revocation hearing."), *cert. denied*, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). In sum, we conclude that Ky.Rev.Stat. § 439.352 as applied in this case is not unconstitutional as the statute did not deprive Sneed of his due process guarantees under the Fourteenth Amendment of The Constitution of the United States.

### D.

Petitioner Sneed also challenges the aggregation of his several sentences pursuant to Kentucky law resulting in a total aggregate sentence of forty-six years incarceration. Because this claim involves a matter of state law, it is not cognizable in a federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977).

### III.

For the reasons stated, the judgment of the district court is AFFIRMED.