Belknap
No. 2004-384

## THE STATE OF NEW HAMPSHIRE

v.

### RICHARD EDSON

Argued: October 20, 2005
Opinion Issued: December 28, 2005

46

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* assistant attorney general, on the brief and orally), for the State.

*Ted Lothstein,* assistant appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. Following a jury trial in Superior Court (*Smukler,* J.), the defendant, Richard Edson, was convicted of second-degree assault, *see* RSA 631:2, I(c) (1996); escape, *see* RSA 642:6 (1996); driving while intoxicated (DWI), *see* RSA 265:82 (2004); RSA 265:82-b (2004) (amended 2005), and driving while certified as a habitual offender, *see* RSA 262:23 (2004). On appeal, he contends that there was insufficient evidence for the jury to find him guilty of second degree assault and that the trial court erred in its allocation of the defendant's pretrial credit among the four consecutive sentences imposed. We affirm in part, vacate in part and remand for resentencing.

The jury could have found the following relevant facts. In the early morning hours of March 15, 2003, Belmont police officer Judith Estes stopped the defendant in his pickup truck after she observed him back down a road and through a stop sign in reverse. Estes, who was wearing body armor, weighed 120 pounds. The defendant was a "Golden Gloves" boxer with over twenty years of boxing experience. Estes believed that the defendant had been drinking because his eyes were bloodshot and watery. She decided to administer field sobriety tests and called dispatch requesting a back-up officer. The defendant failed all of the field sobriety tests.

Although the back-up officer had not yet arrived, Estes told the defendant that she was placing him under arrest for driving while intoxicated. After she instructed the defendant to turn around to be handcuffed, he put his arms out with his hands palms up, started crying and said, "No, please." The defendant then struck Estes on the right side of the head with a closed fist, described by her as a "very sharp blow." He next struck the left side of her head, knocking her over and causing her to briefly lose consciousness. He proceeded to kick Estes in the chest and abdomen four to six times. After the kicking stopped and Estes saw the defendant moving away, she stood up and attempted to activate her pepper spray. The defendant then pushed her into a snow bank and repeatedly struck her in the head and neck area. Finally, the defendant

drove off in his truck as Estes slowly got up and screamed into her shoulder microphone that she had been assaulted and needed immediate assistance. Feeling sick, dizzy, and disoriented, she made her way to her cruiser and tried to pursue the defendant, but she was unable to locate him.

The defendant was convicted on four charges and sentenced to the following consecutive sentences: 10 to 30 years in State Prison for second degree assault, followed by 10 to 30 years in State Prison for escape, followed by 2 1/2 to 5 years in State Prison for operating after habitual offender certification, followed by 12 months in the house of correction for driving while intoxicated. The defendant was also ordered to serve seven days in the multiple DWI offender intervention detention center upon his release from State Prison. The defendant was entitled to 436 days of pretrial credit. The trial court credited 365 days to the 12-month house of correction sentence and the remaining 71 days to the 2 1/2-to-5-year State Prison sentence.

On appeal, the defendant first challenges his conviction for second-degree assault, arguing that there was insufficient evidence of extreme indifference to the value of human life. RSA 631:2, I(c). The defendant argues that proof of that element of the crime required "evidence of more violent conduct, greater injuries to the victim, or situations posing a greater risk of the victim's death." We disagree.

Whether a defendant acted with "extreme indifference" is a question of fact for the jury. *State v. Schultz*, 141 N.H. 101, 105 (1996). In evaluating the defendant's insufficiency claim, we will uphold the jury's verdict unless, viewing the evidence and all reasonable inferences in the light most favorable to the State, no reasonable trier of fact could have found guilt beyond a reasonable doubt. *Id.* In reviewing the sufficiency of the evidence, we examine each evidentiary item in the context of all of the evidence, not in isolation. *State v. Flynn*, 151 N.H. 378, 382 (2004). Further, the defendant carries the burden of proving that the evidence was insufficient. *Id.*

■ There was sufficient evidence to prove that the defendant caused bodily injury to the victim under circumstances manifesting an extreme indifference to the value of human life. The defendant, a "Golden Gloves" boxer, repeatedly hit the 120-pound officer in the head and neck, repeatedly kicked her in the chest and abdomen while she was lying on the ground, and left her injured in a snow bank. Further, a reasonable jury could have found that if it were not for Officer Estes' Kevlar body armor, which contained a quarter-inch steel trauma plate, the defendant's attacks would have caused life-threatening injuries.

Accordingly, a reasonable jury, viewing the evidence in the light most favorable to the State, could have concluded beyond a reasonable doubt that the defendant caused bodily injury to Officer Estes under circumstances manifesting an extreme indifference to the value of human life.

Next, the defendant argues that the trial court erred in allocating 365 days of pretrial confinement credit to the 12-month house of correction sentence. The defendant contends that this eliminated any opportunity for early release based on good behavior. Although he did not object to this allocation below, he now asks us to vacate it as plain error.

 The plain error rule allows us to consider an error that affects substantial rights even though not raised in the trial court by either party. *See* Sup. Ct. R. 16-A. The rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *State v. MacInnes*, 151 N.H. 732, 736-37 (2005). The United States Supreme Court has stated that the federal plain error rule contains four elements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Johnson v. United States,* 520 U.S. 461, 466-67 (1997). We have adopted the same standards for application of our plain error rule. *MacInnes*, 151 N.H. at 737.

On the three felony convictions, the defendant was sentenced to three consecutive State Prison sentences, totaling 22 1/2 to 65 years. On the fourth conviction, a misdemeanor, the defendant was sentenced to serve twelve months in the house of correction consecutive to the State Prison sentences. At the time of sentencing, the defendant was entitled to 436 days of pretrial confinement credit. The trial court allocated 71 days of pretrial credit toward the State Prison sentences, and allocated the remaining 365 days toward the misdemeanor sentence.

The defendant contends that by placing 365 days of the pretrial credit on the house of corrections sentence, which was the last sentence to be served, the trial court inadvertently eliminated any chance he would have to earn a good-time reduction of approximately 120 days of his sentence. The State contends the trial court did not commit plain error for effectively denying the defendant an opportunity to be discharged and released after serving two-thirds of his house of correction sentence because there is no State or federal constitutional or statutory right to good time credit.

The provisions for good time *add* time to a State Prison minimum sentence, but *subtract* time from a house of correction sentence. *See* RSA

651:2, II-e (1996) (a disciplinary period of 150 days is added to each year of a State Prison minimum sentence, to be reduced upon good conduct as provided in RSA 651-A:22); RSA 651:18 (1996) (amended 2003) (house of correction inmate may be released after serving two-thirds of his minimum sentence upon good behavior). In addition, the allocation of pretrial confinement is governed by RSA 651:3 (1996) and RSA 651-A:23 (1996). RSA 651:3, I, provides that "[a]ll the time actually spent in custody prior to the time [the defendant] is sentenced shall be credited in the manner set forth in RSA 651-A:23 . . . ." RSA 651-A:23 provides in relevant part:

> Any prisoner who is confined to the State Prison, any house of correction, any jail or any other place shall be granted credit against both the maximum and minimum terms of his sentence equal to the number of days during which the prisoner was confined in jail awaiting and during trial prior to the imposition of sentence and not under any sentence of confinement.

The defendant contends that RSA 651:18 would have granted him the opportunity for release after serving two-thirds, or approximately 240 days, of his house of correction sentence. He argues that this opportunity was lost when 365 days of his pretrial credit was applied to the house of correction sentence.

We have said that credit statutes stem principally from the recognition that presentence detention is often the result of indigency. *State v. Decker*, 127 N.H. 468, 470 (1985). Presentence detention credit statutes mandate that a prisoner is to receive credit for all jail time— neither more nor less—served before sentencing which relates to the criminal episode for which the prisoner is sentenced, but not receive credit greater than the number of days of his presentencing confinement. A principle underlying the credit statutes is that an indigent offender unable to furnish bail should serve neither more nor less time in confinement than an otherwise identically situated offender who succeeds in furnishing bail. *Id.*

We recognize that it is within the trial court's discretion to allocate pretrial credit. Under *Decker*, however, the trial court's allocation must reflect an application of the credit statutes that ensures the equal treatment of those confined prior to trial due to indigency, and those who are able to post bail. Here, the defendant has lost any opportunity to earn time off of his house of correction sentence for good behavior, and thus could serve more time than a similarly situated offender who furnished bail. As our conclusion in *Decker* was in effect at the time of the defendant's trial and sentencing, our standards for plain error have been

met. *See State v. Emery*, 152 N.H. 783, 786-87 (2005); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Accordingly, we vacate the allocation of pretrial credit and remand for resentencing.

Because we have vacated this allocation, we need not discuss the defendant's argument that the allocation of 365 days of pretrial credit to the house of correction sentence was also illegal in light of the court's order that the defendant serve seven days at the multiple DWI offender intervention center after his release from State Prison. We simply note that the State concedes on appeal that this was error, and thus we assume this issue will not arise again on remand.

> *Convictions affirmed; allocation of pretrial credit vacated; and remanded for resentencing.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.