Hillsborough-northern judicial district
No. 2010-277

THE STATE OF NEW HAMPSHIRE

v.

JOHN MWANGI

Argued: February 16, 2011
Opinion Issued: April 12, 2011

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. The defendant, John Mwangi, appeals the decision of the Superior Court (*O'Neill*, J.) calculating his pretrial confinement credit on his sentence for a robbery conviction. *See* RSA 636:1 (2007). He argues that the trial court erroneously allocated a portion of his incarceration to a prior habitual offender sentence on which he was charged with a parole violation. *See* RSA 651-A:23 (2007). We affirm.

The record supports the following undisputed facts. On April 19, 2006, the defendant was convicted for the felony offense of driving while certified as a habitual offender. He was sentenced to the New Hampshire State Prison for a minimum of one year and a maximum of four years. He was paroled in November 2006. On November 11, 2008, the defendant was arrested for robbery, and, the following day, bail was set at $5,000. He was unable to post bail and remained in the custody of the Hillsborough County House of Corrections.

On November 12, a detention order was issued based upon allegations that the defendant had violated parole by failing "to be of good conduct[,] obey all laws and remain arrest free" stemming from his alleged commission of armed robbery on November 11, and by failing to report to his parole officer. The defendant met with a parole officer, received notice of the parole violation charges, and signed a waiver regarding a preliminary

hearing. Specifically, he acknowledged: "Having been informed of my rights to a Preliminary Hearing . . . I hereby waive these rights. If I am a parolee, I understand I will be transported to NH State Prison pending my appearance at a Revocation Hearing . . . ." On November 14, he was transferred to the New Hampshire State Prison.

A jury found the defendant guilty of robbery on August 11, 2009, and bail was revoked pending sentencing. On September 8, 2009, the defendant completed serving the habitual offender sentence at the prison and was returned to the Hillsborough County House of Corrections, where he remained until his sentencing hearing on the robbery conviction on October 29, 2009. At the hearing, the parties disputed whether the entire period of the defendant's incarceration commencing November 11, 2008, should be calculated as pretrial confinement credit toward the robbery sentence. Ultimately, he received a sentence of not more than seven years, nor less than three and one half years, to be served consecutively to his habitual offender sentence. The trial court awarded him fifty-three days of pretrial confinement credit for his incarceration at the Hillsborough County House of Corrections, which included two days served in November 2008 and the time from September 8, 2009, when he completed his habitual offender sentence, to October 29, 2009, when he was sentenced on his robbery conviction.

The defendant moved to reconsider, requesting 353 days of credit, or alternatively, fifty-five days to correct a calculation error. He argued that he was entitled to 353 days because he had been in custody on the robbery charge from the date of his arrest on November 11, 2008, until his sentencing hearing on October 29, 2009, and was not serving any other sentence of confinement during that time. See RSA 651-A:23. According to the defendant, he was never confined for the parole violation because he was not afforded a final revocation hearing and did not receive a sentence on that violation.

The State, in response, agreed to the requested fifty-five days of credit, but contested the defendant's request for additional time. It argued that his incarceration at the state prison from November 14, 2008, through September 8, 2009, constituted time served on his habitual offender sentence due to his parole violation, and that it could not be counted as both time served to complete his habitual offender sentence and as pretrial confinement credit on his robbery sentence. After a hearing, the trial court increased the house of corrections confinement credit on the robbery sentence from fifty-three days to fifty-five days and allocated the defendant's incarceration at the state prison as time served on his habitual offender sentence. This appeal followed.

■ We first outline the interplay among several statutes governing sentencing, pretrial confinement credit, and parole. The allocation of pretrial confinement credit is governed by RSA 651:3 (2007) and RSA 651-A:23 (2007). *See State v. Edson*, 153 N.H. 45, 49 (2005). RSA 651:3, I, provides in part: "All the time actually spent in custody prior to the time [a defendant] is sentenced shall be credited in the manner set forth in RSA 651-A:23 against the maximum term of imprisonment that is imposed and against any minimum term authorized by RSA 651:2 or 6." RSA 651-A:23 provides in part:

> Any prisoner who is confined to the state prison, any house of correction, any jail or any other place shall be granted credit against both the maximum and minimum terms of his sentence equal to the number of days during which the prisoner was confined in jail awaiting and during trial prior to the imposition of sentence and *not under any sentence of confinement*.

(Emphasis added.) *See Edson*, 153 N.H. at 49 (explaining that pretrial confinement credit statutes stem principally from the recognition that presentence detention is often the result of indigency). It is within the trial court's discretion to allocate pretrial confinement credit. *Id.*

Under the parole statutes, a parolee once arrested is entitled to a preliminary hearing and then a revocation hearing before the parole board, with the latter to occur within forty-five days. RSA 651-A:17 (2007) (amended 2010). The parole board *may* revoke parole for a parolee who, for example, violates the conditions of his parole or violates the law, but *shall* revoke parole for a parolee who is convicted of a felony. RSA 651-A:18 (2007). Once parole is revoked, the parolee "shall be recommitted to the custody of the commissioner of corrections," RSA 651-A:17, and "[t]he time between the return of the parolee to prison after his arrest and revocation of parole shall be considered as time served as a portion of the maximum sentence." RSA 651-A:19 (2007) (amended 2010); *see also* RSA 651-A:23. If not re-paroled, the "prisoner who is recommitted shall serve the remainder of his maximum sentence" less any credits or other time reduction to which he is entitled. RSA 651-A:19.

The defendant acknowledges that as a consequence of this statutory scheme, his parole was revoked "by operation of law" when the jury convicted him of felony robbery, his re-confinement was mandatory, and he was required to serve the remainder of his habitual offender sentence. However, he contends that RSA 651-A:18 and :19 do not "suspend[ ] the due process requirement for a parole revocation hearing," and that absent such a hearing and a sentencing order on the parole violation, he was not serving a "sentence of confinement" under RSA 651-A:23 for that violation while

incarcerated during the pendency of the robbery case. According to the defendant, the trial court's allotment of his incarceration at the state prison as time served for the habitual offender sentence effectively imposed a sentence for the parole violation in violation of his right to due process under the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV.

■ We first consider the defendant's argument under the State Constitution, using federal cases only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). Part I, Article 15 of the State Constitution provides, in relevant part: "No subject shall be . . . deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land . . . ." N.H. CONST. pt. I, art. 15. "Law of the land in this article means due process of law." *State v. Veale*, 158 N.H. 632, 636, *cert. denied*, 130 S. Ct. 748 (2009). The ultimate standard for judging a due process claim is the notion of fundamental fairness. *Id.* at 637; *see State v. Haley*, 141 N.H. 541, 544 (1997) ("due process under our constitutional republic has, as a primary consideration, the notion that no matter how rich or how poor, all of our citizens are entitled to fundamental fairness when the government seeks to take action which will deprive them of their property or liberty interests" (quotation and brackets omitted)). Fundamental fairness requires that government conduct conform to the community's sense of justice, decency and fair play. *Veale*, 158 N.H. at 637.

■■ Our threshold determination in a procedural due process claim is "whether the challenged procedures concern a legally protected interest." *Id.* (quotation omitted). If such an interest is at stake, we then determine whether the procedure at issue afforded the requisite safeguards. *Haley*, 141 N.H. at 544. In so doing, we balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Veale*, 158 N.H. at 639 (quotation omitted). Further, we are mindful that " 'the requirements of due process are flexible and call for such procedural protections as the particular situation demands.' " *Id.* at 642 (brackets omitted) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005)); *see Baker v. Cunningham*, 128 N.H. 374, 379 (1986) ("The degree of procedural

protection required varies and must be determined with reference both to the individual right or expectation in question and to the public interest that justifies a limitation on the right." (citations omitted)).

■ We have recognized that a significant liberty interest exists which is worthy of due process protection under our State Constitution when the State seeks to revoke parole and incarceration may be the sanction of a parole violation. *See Stapleford v. Perrin*, 122 N.H. 1083, 1088 (1982); *Moody v. Cunningham*, 127 N.H. 550, 553 (1986); *Baker*, 128 N.H. at 378, 381; *see also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (parole revocation deprives individual of conditional liberty). The due process to be afforded includes:

> (1) written notice of the conduct which triggers the sought-after incarceration; (2) disclosure to the defendant of the evidence against him; (3) the opportunity to be heard in person and to present witnesses and evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a statement in the record by the court indicating in substance the evidence relied upon and the reasons for imposing commitment; and (6) representation by counsel, to be appointed by the court if the defendant is indigent.

*Stapleford*, 122 N.H. at 1088; *see Moody*, 127 N.H. at 554; *see also Morrissey*, 408 U.S. at 488 (under Federal Constitution, to revoke parole when revocation decision is discretionary, parolee must be afforded opportunity for hearing that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation").

Here, the defendant waived his statutory right to a preliminary hearing, and does not contend that his due process rights were violated by any failure to afford him a final parole revocation hearing within forty-five days of his arrest or at any time prior to the robbery trial. *See* RSA 651-A:17. Indeed, he acknowledged to the trial court that he was waiting for the robbery charge to be resolved at trial prior to going before the parole board on the parole violation charges. *Cf. State v. Flood*, 159 N.H. 353, 355 (2009) (defendant's decision to testify or present evidence, or to remain silent, at hearing for imposition of suspended or deferred sentence occurring prior to related criminal prosecution is a strategic choice, though a difficult one). Nevertheless, he contends that he did not waive his right to a final revocation hearing, and due process requires that he be afforded one even after his conviction of a new felony level crime (here, robbery). While acknowledging that "[a] jury has already decided the merits of the felony and the [parole] [b]oard thus has no discretion with regard to the revocation of parole or sentencing," he argues that a hearing is necessary

to resolve "the sole remaining issue [of] whether the person who was convicted of the felony is the same person who was on parole — an issue not resolved by the felony trial, but nonetheless, a necessary prerequisite to the imposition of the parole sanction." According to the defendant, "the relative benefit of some proceeding at which the sanction called for by RSA 651-A:18, II is formally imposed outweighs its burden and cost." We are not persuaded.

■■ Once the defendant was convicted of felony robbery, a final parole revocation hearing was no longer necessary to protect his due process rights associated with the parole violation charge that stemmed from his commission of the robbery. When parole revocation is mandatory for a charged violation, the purpose of the due process protections afforded a parolee for that charged violation is to ensure that a fact-finder will make an accurate determination of the charge on the basis of reliable evidence and verified facts. *See Moody*, 127 N.H. at 554; *Morrissey*, 408 U.S. at 484 (one purpose of informal parole revocation hearing is to provide procedural protection "to assure that the finding of a parole violation will be based on *verified facts*" (emphasis added)). Here, a final parole revocation hearing would not provide the defendant with more procedural protections than those already afforded to him at the trial on the robbery charge. *See Stapleford*, 122 N.H. at 1088; *see also Morrissey*, 408 U.S. at 480 ("revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"). A jury found him guilty of felony robbery beyond a reasonable doubt and the law required revocation of his parole based solely upon that conviction. *See* RSA 651-A:18. Thus, post-conviction, there was no longer a meaningful risk of an erroneous deprivation of the defendant's conditional liberty for a parole violation that stemmed from his commission of a felony. *See Veale*, 158 N.H. at 639 (to evaluate whether procedure afforded requisite safeguards, court considers, among other things, risk of erroneous deprivation of private interest through procedures used).

Requiring the parole board to conduct a revocation hearing after the defendant's felony conviction would add little, if any, value to the procedural safeguards that were afforded the defendant in this case. *See id.*; *see also Morrissey*, 408 U.S. at 490 ("Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime."). We reject the defendant's argument that it remains necessary to conduct a revocation hearing after his felony conviction to ensure that "the person who was convicted of the felony is the same person who was on parole." The defendant is correct insofar as his status as a parolee was not an issue

resolved by the jury's verdict convicting him of robbery. However, had there been a serious issue that he was not the same person who was on parole, he should have raised it at the sentencing hearing for the robbery. At that hearing, the parties expressly disputed the calculation of pretrial confinement credit given the defendant's incarceration associated with his parole violation. The defendant did not raise an identity issue either at the sentencing hearing or at the later hearing on his motion for reconsideration. Even on appeal before us, he argues for a final revocation hearing while openly acknowledging that he was on parole at the time he was convicted of a new felony.

We disagree with the defendant that "the time and expense associated with such a hearing is minimal" and that "the relative benefit of some proceeding at which the sanction [of mandatory revocation under] RSA 651-A:18, II is formally imposed outweighs its burden and cost." Requiring the parole board to convene and conduct an informal hearing in this case would compel an unnecessary task that would impose fiscal and administrative burdens on the state. *Cf. State v. Almodovar*, 158 N.H. 548, 554 (2009) (hearing on imposition of deferred sentence required to assure that incarceration is not simply a result of defendant's inadvertent failure to file the correct petition, but rather that it furthers the goals of sentencing).

Our holding that due process does not require that a parolee be afforded a final parole revocation hearing in this context accords with decisions in several jurisdictions that have considered this issue under the Federal Constitution. *See Sneed v. Donahue*, 993 F.2d 1239, 1243-44 (6th Cir. 1993); *United States v. Cornog*, 945 F.2d 1504, 1512 (11th Cir. 1991); *Pickens v. Butler*, 814 F.2d 237, 240-41 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987); *Boulder v. Parke*, 791 S.W.2d 376, 377-78 (Ky. Ct. App. 1990); *Ringor v. State*, 965 P.2d 162, 170-71 (Haw. Ct. App. 1998). We need not decide today whether a situation could arise in which due process would require a final parole revocation hearing after a parolee has been convicted of a felony. *See Veale*, 158 N.H at 642 (requirements of due process are flexible and call for such procedural protections as the particular situation demands).

We conclude that the trial court did not deprive the defendant of due process of law under the State Constitution when it calculated his pretrial confinement credit on his sentence for the robbery conviction. We reach the same result under the Federal Constitution because the State Constitution provides at least as much protection under these circumstances. *See Morrissey*, 408 U.S. at 489; *Sneed*, 993 F.2d at 1243-44; *Barnet v. Warden, N.H. State Prison for Women*, 159 N.H. 465, 468-70 (2009).

Because the defendant's appeal fails on the merits, we need not address the State's argument that the defendant's attempt to gain additional pretrial confinement credit on his robbery sentence amounts to an im-

proper collateral attack on his habitual offender sentence. Also, we deem waived issues the defendant raised in his notice of appeal but did not brief. *State v. Kelley*, 159 N.H. 449, 455 (2009).

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.