Coos.
No. 2011-248

DONALD GENTRY

v.

WARDEN, NORTHERN NEW HAMPSHIRE CORRECTIONAL FACILITY

Argued: January 18, 2012
Opinion Issued: February 10, 2012

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the petitioner.

*Michael A. Delaney*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the brief and orally), for the defendant.

LYNN, J. The petitioner, Donald Gentry, appeals the decision of the Superior Court (*Bornstein*, J.) denying his petition for a writ of habeas corpus. The trial court held that the petitioner, an offender whose parole was revoked by the parole board, was not entitled to receive credit against the ninety-day term of recommitment to prison imposed pursuant to RSA chapter 651-A:19, I (Supp. 2010) for the period between his arrest and revocation of his parole.[1] We affirm.

## I

The pertinent facts are not in dispute. The petitioner was arrested on a parole violation warrant on October 13, 2010, and confined in prison until he received a parole revocation hearing on December 7, 2010. Following the hearing, the parole board recommitted the petitioner to prison for ninety days pursuant to RSA 651-A:19, I (Supp. 2010). The petitioner requested that the fifty-five days[2] he spent in confinement before the hearing be credited against the ninety-day recommitment period. The board denied that request, and the superior court upheld the board's decision, ruling that "inmates are not entitled to pre-hearing confinement credit against the 90-day recommitment period but against only the maximum sentence." This appeal followed.

## II

We review the trial court's statutory interpretation *de novo*. *State v. Beauchemin*, 161 N.H. 654, 658 (2011). We are the final arbiters of legislative intent as expressed in the words of the statute considered as a whole. *Id.* When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We do not read words or phrases in isolation, but in the context of the entire statutory scheme. *New Hampshire Health Care*

---

[1] At oral argument, the State advised that, as of that date, the petitioner had completed his maximum sentence. Despite this, we do not regard the case as moot, because, given the short ninety-day recommitment mandated by the statute, the petitioner's position that he is entitled to have the period of pre-hearing incarceration deducted from the sentence clearly is capable of repetition yet evading review. *See Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 590-91 (2000).

[2] RSA 651-A:17 (2007 & Supp. 2011) requires that revocation hearings be held within forty-five days after a parolee is arrested for a parole violation. The record does not indicate why this time limit was not met in the instant case, but the petitioner does not challenge his parole revocation based on the failure to hold a timely hearing.

*Assoc. v. Governor*, 161 N.H. 378, 385 (2011). When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. *Id.*

As amended by Laws 2010, 247:10, RSA 651-A:19, I, provided:[3]

> A prisoner who is recommitted shall serve 90 days in prison before being placed back on parole or the remainder of his or her maximum sentence, whichever is shorter. The time between the return of the parolee to prison after arrest and revocation of parole shall be considered as time served as a portion of the maximum sentence.

The petitioner argues that his pre-hearing confinement should have been credited toward the ninety-day recommitment period because the term "maximum sentence" in the second sentence of RSA 651-A:19, I, necessarily includes the ninety-day recommitment period. He contends that the distinction drawn by the trial court between the ninety-day recommitment period and the maximum sentence "is neither one made in the statute nor cognizable at law."

The familiar doctrine of *expressio unius est exclusio alterius* ("the mention of one thing excludes another") persuades us that the trial court's interpretation of the statute is correct. In the first sentence of RSA 651-A:19, I, the legislature adopted a maximum recommitment period of the shorter of ninety days or the remainder of the maximum sentence for offenders found to have violated their parole conditions. The second sentence of the statute explains that whatever time the parolee spent confined after arrest but before revocation of parole is to be credited against the maximum sentence. In light of the reference in the first sentence to both the maximum sentence and the ninety-day recommitment period, the inclusion of only "maximum sentence" in the second sentence, addressing how to apply credit for time served post-arrest/pre-revocation, indicates that the legislature intended this credit to be applied solely to reduce the maximum sentence and not to reduce the recommitment period (unless necessary to avoid exceeding the maximum sentence). *See* 2A N. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:23, at 417 (7th ed. 2007) ("The force of the maxim [*expressio unius est exclusio alterius*] is strengthened where a thing is provided in one part of the statute and omitted in another."). This conclusion is reinforced by RSA 651-A:17 (Supp. 2010), which makes it clear that the recommitment period begins only when, after a hearing, the board formally

---

[3] In 2011, RSA 651-A:19 was substantially amended. *See* Laws 2011, 244:3 (effective July 13, 2011).

revokes the prisoner's parole: "A prisoner whose parole is revoked shall be *recommitted* to the custody of the commissioner of corrections." (Emphasis added.)

We also reject the petitioner's contention that our reading of the statute leads to absurd results. While we agree that some parolees will serve more time in confinement than others based solely on how quickly after arrest they receive a revocation hearing, the plight of parole *violators* who must wait longer for a hearing is not meaningfully different from that of parolees who are arrested and detained for a violation but are ultimately *exonerated* at their revocation hearings. Like the petitioner, parolees in the latter category receive nothing more than credit against the maximum sentence for their pre-hearing incarceration — despite the fact that, in retrospect, it has been determined they should not have been re-incarcerated at all. In the absence of any suggestion of parole board revocation hearings being improperly delayed, the fact that some parolees serve more time in custody than others is an unfortunate consequence of a system that cannot act instantaneously and occasionally errs. *Cf. People v. Idziak*, 773 N.W.2d 616, 629-30 & n.23 (Mich. 2009) (rejecting constitutional challenge to Michigan's procedure for calculating sentences when a parolee commits a new offense while on release even though methodology may result in some defendants serving more prison time than others based on " 'arbitrary' factors, such as the degree of docket congestion").

Because we agree with the trial court's conclusion that RSA 651-A:19 did not permit the parole board to credit the time the petitioner spent in confinement between his arrest and revocation of his parole against his ninety-day recommitment period, we need not address the petitioner's objections to the parole board's view that it retained discretion to award such time against the ninety-day recommitment period.

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.