Hillsborough-northern judicial district
No. 2010-679

### THE STATE OF NEW HAMPSHIRE

v.

### STEVEN FOREST

Argued: February 15, 2012
Opinion Issued: May 22, 2012

*Michael A. Delaney*, attorney general (*Lucy H. Carrillo*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Steven Forest, appeals the decision of the Superior Court (*Garfunkel*, J.) denying his request for pretrial confinement credit, *see* RSA 651-A:23 (2007), on his sentences for conspiracy to commit burglary and accomplice liability for burglary, *see* RSA 626:8 (2007); RSA 629:3 (2007); RSA 635:1 (2007). We affirm.

The record supports the following undisputed facts. In 2006, the defendant was convicted of conspiracy to possess a controlled drug with intent to sell, for which he received a sentence of one to five years at the New Hampshire State Prison, stand committed. On April 25, 2007, he was paroled to a drug counseling halfway house.

On July 8, 2007, the defendant was arrested on a parole violation warrant for various parole violations unrelated to the instant charges. At the time of his arrest, he was also a suspect in a June 24 burglary at the A-1 Gas Station in Goffstown. That same day or shortly thereafter, he was formally arrested on charges arising out of the burglary and he was unable to post bail. On July 25, a second parole violation warrant was issued in relation to the burglary charges. On July 27, the defendant waived his right to a preliminary parole violation hearing pending resolution of the burglary charges. Following his July 8 arrest, the defendant was initially housed at the Hillsborough County House of Corrections; however, at some point, he was transferred to the New Hampshire State Prison as a result of the parole violation warrants.

For reasons that are unnecessary to recount here, the burglary charges were not adjudicated until September 9, 2010. The parties agree that, at this point, the defendant had been incarcerated for 1,154 days. On June 25, 2009, he filed a motion seeking pretrial confinement credit toward any sentence on the burglary charges for the entire period of his incarceration following his arrest on July 8, 2007. The defendant argued that since he had not yet had a parole revocation hearing, his parole had not been revoked

and, thus, the entire period of his incarceration constituted pretrial confinement on the burglary charges rather than any other sentence of confinement. *See* RSA 651-A:23. The State objected, and the trial court held a hearing on September 8, 2010.

At the hearing, the executive assistant to the adult parole board testified that, while the defendant has been incarcerated, he "has been credited all along . . . day for day. . . . He's continued to serve the maximum of [his underlying] sentence." He explained that the parole board "[u]sually" gives a parole violator credit against his original underlying sentence for time spent incarcerated "from the date of arrest" on a parole violation warrant until his parole revocation. However, he further indicated that, were a defendant to receive pretrial confinement credit on a new charge, "[m]ost of the time" the parole board takes the "position that [it] would be double dipping" to give the defendant the same credit on his underlying charge.

The court denied the defendant's motion, ruling that:

> the prison is giving [the defendant] credit on the sentence on which . . . the parole warrant was issued, and . . . [he is] receiving credit towards that . . . maximum sentence for each day that he spends at the New Hampshire State Prison, so that he is already receiving credit, as [RSA 651-A:19] provides, and . . . any additional credit would, in essence, be double credit, which the New Hampshire Supreme Court has said is inappropriate.

That same day, the defendant pleaded guilty to the charges in this case as part of a plea agreement. Under the plea agreement, the defendant was sentenced on each charge to three and a half to seven years, stand committed, with all but six months of the minimum sentence suspended. The sentences run concurrent with one another but consecutive to any "parole setback." This appeal followed.

The defendant argues that the trial court improperly relied upon RSA 651-A:19 (2007) (amended 2010, 2011) and erred in denying him 1,154 days of pretrial confinement credit toward his burglary sentences pursuant to RSA 651-A:23. The defendant "does not argue that he is entitled to apply the 1,154-day credit toward both the sentence on the underlying charge and the burglary sentence." Rather, he contends that "[t]he mandate of RSA 651-A:23 is clear" that "[s]o long as a criminal defendant is incarcerated prior to sentencing and not under a sentence of confinement, the sentencing court must grant credit for the confinement." He maintains that here, he "was not under a sentence of confinement because his parole had not been revoked and he had not been recommitted to the prison"; thus, "at the time of his September 9, 2010 sentencing on the burglary indictments, he was entitled as a matter of law to the award of that time toward that sentence."

We review the trial court's statutory interpretation *de novo. Gentry v. Warden, N. N.H. Correctional Facility*, 163 N.H. 280, 282 (2012). We are the final arbiters of legislative intent as expressed in the words of the statute considered as a whole. *Id.* "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice." *State v. Burke*, 162 N.H. 459, 461 (2011) (quotation omitted); RSA 625:3 (2007). When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe the language according to its plain and ordinary meaning. *Gentry*, 163 N.H. at 282 . We do not read words or phrases in isolation, but in the context of the entire statutory scheme. *Id.* When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. *Id.*

The allocation of pretrial confinement credit is governed by RSA 651:3 (2007) and RSA 651-A:23. *See State v. Mwangi*, 161 N.H. 699, 702 (2011). RSA 651:3, I, provides in pertinent part: "All the time actually spent in custody prior to the time [the defendant] is sentenced shall be credited in the manner set forth in RSA 651-A:23 against the maximum term of imprisonment that is imposed and against any minimum term authorized by RSA 651:2 or 6." RSA 651-A:23 provides in relevant part:

> Any prisoner who is confined to the state prison, any house of correction, any jail or any other place shall be granted credit against both the maximum and minimum terms of his sentence equal to the number of days during which the prisoner was confined in jail awaiting and during trial prior to the imposition of sentence and not under any sentence of confinement.

 We have said that credit statutes stem principally from the recognition that presentence detention is often the result of indigency. *State v. Edson*, 153 N.H. 45, 49 (2005). A principle underlying the credit statutes is that an indigent offender unable to furnish bail should serve neither more nor less time in confinement than an otherwise identically situated offender who succeeds in furnishing bail. *Id.*

> We construe our credit statutes to mandate that a prisoner is to receive credit for all jail time — neither more nor less — served before sentencing which relates to the criminal episode for which the prisoner is sentenced, but does not receive credit greater than the number of days of his presentencing confinement.

*State v. Decker*, 127 N.H. 468, 471 (1985) (quotation omitted) (holding that, where the defendant was held on several charges prior to trial, he was not entitled to pretrial confinement credit toward *each* of the three consecutive sentences imposed). While it is within the trial court's discretion to allocate

pretrial confinement credit, *Mwangi*, 161 N.H. at 702, the trial court's allocation must reflect an application of the credit statutes that ensures the equal treatment of those confined prior to trial due to indigency, and those who are able to post bail, *Edson*, 153 N.H. at 49.

■ Here, there is no dispute that, following his arrest, the defendant remained incarcerated, at least in part, as a result of the parole violation warrants. Indeed, there is no evidence that, had the defendant been able to post bail, he would not have remained incarcerated on the parole violation warrants. Even on appeal, the defendant acknowledges that he was detained on the parole violation warrants. Certainly, had the defendant been incarcerated solely as a result of his inability to post bail on the burglary charges, he would have been entitled to pretrial confinement credit for time spent awaiting resolution of those charges. *See* RSA 651-A:23; *Edson*, 153 N.H. at 49. In this case, however, the defendant was also incarcerated as a result of the parole violation warrants. Thus, his incarceration was not exclusively related to the criminal episode for which he was sentenced. *Cf. Edson*, 153 N.H. at 49 (pretrial confinement credit statutes mandate that a prisoner receive credit for all jail time "served before sentencing which relates to the criminal episode for which the prisoner is sentenced"). Accordingly, we conclude that the trial court was not mandated to grant pretrial confinement credit in this case.

The defendant argues that it was improper for the trial court to rely upon RSA 651-A:19 in denying him pretrial confinement credit. Although he acknowledges that "[a]fter being convicted of the burglary charges, [his] parole would have been revoked by operation of law, thereby obviating the right to a revocation hearing," he maintains that because his "burglary sentencing took place before his parole revocation . . . the triggering condition had not yet occurred." We disagree.

Under the parole statutes, once a parolee is arrested he is entitled to a preliminary hearing, *see* RSA 504-A:5 (2010), and then a revocation hearing before the parole board, RSA 651-A:17 (Supp. 2011); *Mwangi*, 161 N.H. at 702. The parole board shall revoke parole for a parolee who is convicted of a felony. RSA 651-A:18, II(a) (2007); *Mwangi*, 161 N.H. at 702, 705. Once parole is revoked, the parolee "shall be recommitted to the custody of the commissioner of corrections," RSA 651-A:17, and "[t]he time between the return of the parolee to prison after his arrest and revocation of parole shall be considered as time served as a portion of the maximum sentence." RSA 651-A:19.

■ In this case, the defendant pleaded guilty to the burglary charges and the judge accepted and entered his plea, thereby convicting him of those charges. *See* BLACK'S LAW DICTIONARY 384 (9th ed. 2009) (defining

"conviction" in relevant part as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty"). It follows that parole revocation became mandatory. *See* RSA 651-A:18, II(a); *cf. Mwangi,* 161 N.H. at 705 ("A jury found [the defendant] guilty of felony robbery beyond a reasonable doubt and the law required revocation of his parole based solely upon that conviction."). Consequently, under RSA 651-A:19, the time between the defendant's return to prison after his arrest on the parole violation warrant and his conviction on the burglary charges, which effectively constituted revocation of his parole, "shall be considered as time served as a portion of the maximum sentence." RSA 651-A:19; *cf. Gentry,* 163 N.H. at 282 (finding that in "addressing how to apply credit for time served post-arrest/pre-revocation, . . . the legislature intended this credit to be applied solely to reduce the maximum sentence and not to reduce the recommitment period"). Although the court denied the defendant's request for pretrial confinement credit prior to his guilty plea and sentencing, under the circumstances, we see no problem with its conclusion that the time spent incarcerated before sentencing on the burglary charge would be allocated to the defendant's underlying sentence pursuant to RSA 651-A:19 and not as pretrial confinement on the burglary charges under RSA 651-A:23.

Other jurisdictions that have addressed this issue have come to similar conclusions. *See Ali v. District of Columbia,* 612 A.2d 228, 230 (D.C. 1992) (finding that "if the parole violation warrant was validly executed while appellant was being held for the new offense, he would not be entitled to receive credit in the new case for time spent after the warrant was executed" because that time would be credited to the sentence for which he was on parole); *State v. Blondin,* 665 A.2d 587, 592 (Vt. 1995) (holding that "when a defendant is incarcerated based on conduct that leads both to revocation of probation or parole and to conviction on new charges, the time spent in jail before the second sentence is imposed should be credited toward only the first sentence if the second sentence is imposed consecutively").

■ Finally, the defendant argues that "the court's reliance on RSA 651-A:19 produces the untenable rule that a criminal defendant who at the time of sentencing is detained by dint of both bail and parole violation warrant is never entitled to pretrial confinement credit." We disagree. Like the defendant in this case, such defendants will in all likelihood receive credit for the time served against their maximum sentences for which they were on parole. Thus, "in neither case is the time served awaiting a subsequent conviction not credited." *People v. Johnson,* 769 N.W.2d 905, 910 (Mich. Ct. App. 2009) (finding that defendant who committed new offenses

while on parole was not entitled to pretrial confinement credit on those offenses for time served awaiting trial because the time served was credited against his prior conviction for which parole was revoked). In addition, we note that although RSA 651-A:23 does not *require* a sentencing court to award pretrial confinement credit in circumstances where the defendant also is being held in custody for a parole violation, nothing in the statute *prohibits* the court from doing so.

Moreover, we note that the defendant had a statutory right to a parole revocation hearing within forty-five days of his arrest on the parole violation warrant, *see* RSA 651-A:17. However, he waived that right and chose to wait for the burglary charges to be resolved before having a hearing before the parole board on the parole violation charges. Had the defendant chosen to have a parole revocation hearing within forty-five days, he may have received a punishment for violating parole that he could have served pending resolution of the burglary charges. Any remaining time spent incarcerated before resolving the burglary charges would then have been allotted as pretrial confinement credit.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.